# Davidson *versus* Barclay.

1. Davidson by articles sold to Barclay, who took possession, and afterwards went into the army, his family remaining. Anderson being an inmate of the family and Mickey a renter of one room, Davidson brought ejectment against Anderson and Mickey to enforce performance, obtained an award, to be released on condition, which not being performed, he took possession, all during Barclay's absence. *Held*, that Barclay was not concluded.

2. Barclay being in military service was not liable to suit and could not be deprived of his exemption by indirection.

3. If the writ had issued against Barclay the court would have abated it.

4. Mickey had no such possession as would make an ejectment against him a remedy for specific performance.

5. Mickey did not represent Barclay's possession nor the whole premises bound by the contract.

6. Mickey's was not the case of a tenant occupying under an absent vendee and bound to notify his landlord.

7. Barclay was in the principal possession by his family, and entitled to service.

[Davidson *v.* Barclay.]

8. A vendor cannot enforce performance of an entire contract by ejectment against a tenant of a single field or room.

9. Proceeding in equity for specific performance requires the object to be fully set forth to make an available decree.

10. A bill setting forth a single room as the subject of the contract would be imperfect.

11. A vendee not summoned, whether by bill or ejectment, would not be affected by a judgment against one who did not represent fully and truly the entire subject of the contract.

12. The articles were that the purchase-money should be paid in 1870, interest payable on it half-yearly, and if interest remained unpaid for thirty days Davidson might declare the principal due and collect it immediately. *Held*, that if the interest had been overdue Davidson could not rescind the contract.

13. The interest in fact was not overdue when the condition under the award was broken. *Held*, that Barclay might show this in an ejectment against Davidson.

14. Davidson's entry under the award was without effect, and he was in no better position than before.

15. The rent of the premises after Davidson's entry was equal to the interest; he could claim no interest without surrendering possession.

16. When Barclay brought this ejectment, the principal not being due, he was not required to make a tender.

17. Barclay returned from the army in 1865, Davidson having entered in 1863, and made improvements. Barclay was not estopped by silence nor bound to pay for these improvements.

18. Silence estops only when it is a fraud.

19. The fact that the improvements were valuable did not vary this: value alone is not a criterion of equity.

20. It would be against public policy and in conflict with Barclay's dominion over his property to allow Davidson for the improvements made in prosecution of his illegal act and against Barclay's will.

21. The unmolested enjoyment of possession is as much a right of property as the ownership of the title.

22. The kind of improvement necessarily controls the enjoyment.

23. Delay, where the purchaser must pursue his contract promptly, is a reason for controlling the performance in equity.

24. After Barclay's return Davidson made other improvements: it did not appear that Barclay knew his rights and acquiesced. *Held*, that he was not estopped to claim the land, but his recovery must be on terms to pay for the latter improvements.

25. Barclay's remissness after his return in investigating Davidson's right is a ground of equity as to improvements.

26. The amount being unliquidated, Barclay was not bound to make a tender.

November 10th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county:* No. 107, to October and November Term 1869.

To February Term 1868 James Barclay brought an action of ejectment against Edward Davidson, for three lots in the borough of Lawrenceville now Pittsburg.

The defendant was the owner of the property in dispute on the 30th of March 1861. On that day he entered into an agreement with the plaintiff as follows:—

[Davidson *v.* Barclay.]

" The said Edward Davidson does hereby agree with the said James Barclay, to sell to him three lots or pieces of ground, situate in the borough of Lawrenceville, &c. (the lots in dispute) * * * for the sum of $1300 ; to be paid in nine years from the 1st day of April 1861, with lawful interest, said interest to be paid semi-annually, viz.: on the 1st day of October 1861, and on the 1st day of April 1862, and so on, semi-annually, as the terms come due, for the period of said nine years. The said Edward Davidson hereby agrees that he will, on the 1st day of April A. D. 1870, on receiving from the said party of the second part, the balance unpaid of the said purchase-money, with all interest that may be due thereon, execute a good and sufficient deed of conveyance, in fee simple, &c. And the said Barclay agrees that he will, on the said 1st day of April, A. D. 1870, and on the execution of said deed of conveyance to him, pay unto the said Davidson, his heirs, executors, administrators or assigns, the balance unpaid of the $1300 ; and, further, to pay the interest in the mean time, on whatever account, of said $1300, may be unpaid semi-annually, on the aforesaid terms and days, viz.: the first days of October and April, each and every year of said term of nine years ; and, further, to pay all expenses of collection, &c. ; and, further, should any instalment of interest remain unpaid for thirty days after the same may become due, then the said Davidson may declare the whole sum, principal and interest to be due, and cause process to be issued immediately for the collection thereof—said party of the second part hereby waiving stay of execution, inquisition and condemnation on any property taken in execution by virtue of any judgment obtained for said principal or interest."

On the 6th of May 1863, Davidson brought an ejectment against George W. Mickey and Agnes Anderson, for the premises in dispute; the precipe stated that they were " the same lots which said Davidson, by article of agreement, dated the 30th day of March 1861, sold, and agreed to convey to one James Barclay, for the sum of $1300, as by reference to said article will fully appear, and which sum is all now due and payable," &c.

This action was referred under the compulsory arbitration law. On the 7th of August 1863, the arbitrators found an award for the plaintiff to be released on the payment of $1366.03 in 60 days. At the expiration of that time the money not being paid Davidson went into possession.

On the trial, April 14th 1869, before Mellon, J., the plaintiff gave in evidence the article of agreement, with evidence of his having left home in 1862 and going into the army of the United States, and other evidence not necessary to state—the facts having been found by a special verdict.

The defendant proposed to prove :—

1. That at the time Barclay left home, in the summer of 1862,

[Davidson v. Barclay.]

he left his tools, work, &c., as he had been engaged with them the day preceding; that he was deeply indebted at the time, and that he left in his working clothes, without announcing any intention of going away.

2. By Robert Bill, that in August 1862, he came to Pittsburg with Barclay, and Barclay left him and went off, and, although he made inquiry for him, at his residence, of members of Barclay's family, he never learned where he was, until the winter of 1864; and to be followed by other evidence of like import.

3. By various witnesses, that in the summer of 1862, Barclay, the plaintiff, was deeply in debt; that he left his home, in Lawrenceville, clandestinely, no person in the neighborhood, with whom he had business transactions, knowing of his intention of leaving, nor where he had gone, after he did leave; that whenever parties having business with him, called upon his family, to inquire for him, they were told, by his wife, and other members of his family, that they did not know where he was, with the exception of one time, when John Wilkinson, having business with him, inquired of his (Barclay's) wife, where he was, and was told by her, that he was working on the railroad, near Baltimore; and that it was not reported in the neighborhood where he had lived, that he was in the army, until the winter of 1864-5.

4. In connection with the record of the recovery in ejectment against the tenants of Barclay, that the defendants, in that case, appeared by counsel, and set up, as a defence, the same claim of title (and no other), as the claim of title that Barclay has offered in this case, to wit, the article of agreement from Davidson. The testimony now offered, in connection with the record, is offered, first, as a bar to the plaintiff's right of recovery in this case, as it is an action for the purchase-money; second, to show that defendant went into possession, not as a trespasser, as claimed by plaintiff, but under a claim of title and right to do so, under the recovery in that case.

All these offers were rejected, and several bills of exception sealed.

In rebuttal, the plaintiff offered in evidence :—

5. The official certificate of his discharge, with recorder's certificate that it is recorded in Allegheny county; accompanied with plaintiff's affidavit endorsed thereon, stating that he is the identical James Barclay.

6. Record of Mortgage.—Edward Davidson to the Dollar Savings Bank, dated August 28th 1865, for the sum of $3000, with interest at 8 per cent. including the property in question, and other property of the defendant, and an encumbrance thereon, dated August 28th 1865.

These offers were objected to by the defendant, admitted, and several bills of exception sealed.

7. The defendant, in reply, proposed to prove that the other property included in the mortgage offered in evidence by the plaintiff, is more than sufficient to pay it.

This offer was rejected, and a bill of exceptions sealed.

There was much evidence given on both sides. The jury found a special verdict, viz. :—

" The defendant, Davidson, was seised in fee of the property in question, described in the writ in this case, and being so seised, agreed to sell and convey the same to the plaintiff, Barclay, by a contract, in writing, dated March 30th 1861, which we make part of our finding. The plaintiff entered into the possession of said property in pursuance of said contract, and made improvements thereon to the value of $300 : the interest of the purchase-money stipulated in said contract to be paid, was paid by the plaintiff to the defendant up until the 1st day of October 1863, at and before which time the accruing interest on the purchase-money was about equivalent to the rent which might have been obtained for the premises : in August 1862 the plaintiff left the neighborhood, leaving his family and his tenant, Geo. M. Mickey, on the property, and enlisted, was mustered into the military service of the United States on the 28th day of August 1862, and continued in said service until mustered out on the 20th day of June 1865 : on the 6th day of May 1863 the defendant instituted an action of ejectment in the Court of Common Pleas of this county at No. 262, June term 1863, against Agnes Anderson, the plaintiff's mother-in-law, who was an inmate of plaintiff's family, then residing on the said property, and George M. Mickey, the plaintiff's tenant, who also resided in a room of plaintiff's house, on the property, paying a monthly rent, but the plaintiff was not joined as a party in said action ; which action and record and proceedings therein, &c., we make part of this our finding.

The jurors find, that Davidson had sufficient knowledge of Barclay's whereabouts when he brought the suit on the 6th day of May 1863, against George M. Mickey and Mrs. Anderson, and that he had enlisted in the military service of the United States ; and that, on or about the 1st day of October 1863, the defendants in said case, No. 262, June term 1863, Mickey and Mrs. Anderson, together with plaintiff's wife and children, removed from the property in question to Minersville, about two miles distant, where they resided until after the plaintiff's return from the army, and the property in question was thereby left vacant and unoccupied, and that the cause of said Mickey, and Mrs. Anderson, and the plaintiff's family, so removing, was their apprehension that when the sixty days allowed in the compulsory award in said case, No. 262, June term 1863, against them for the payment of the purchase-money should expire, they would be forcibly

[Davidson v. Barclay.]

ejected from the premises; that shortly after the removal of plaintiff's family and tenants from said property, the defendant entered and retook possession thereof, and removed the then buildings therefrom, and commenced erecting a brick dwelling-house thereon, and making other permanent improvements; the value of the improvements by defendant, so removed from said property, was $500; we find, that defendant so entered and took possession and made the improvements thereon, in assertion of his claim of title and legal right so to do, and in the belief that the plaintiff's equitable title under said contract was wholly gone and rescinded by virtue of the award and proceedings in the action of ejectment before referred to; we find that, after the discharge of the plaintiff from the military service, as aforesaid, to wit, on the 1st day of July 1865, he returned to his family at Minersville, aforesaid, and remained there a week or so, was then absent for a few months, when he again returned, and he and his family have resided in the neighborhood of the property in question, at the distance of about two miles therefrom, ever since. We find, that the whole value of the permanent improvements made by the defendant on said property since he took possession thereof, after plaintiff's family and tenant had left, as aforesaid, after deducting the value of the buildings or improvements by him removed, as aforesaid, amounts to the sum of $7000; and that, after plaintiff's return from the army, at 1st July 1865, he gave defendant no notice of any intention on his part to re-assert his equitable title or claim to the property, and made no objection to defendant's possession, or his erection of improvements thereon, until the 11th day of November 1867, when he procured and had served on the defendant a rule to show cause in said case, No. 262, June term 1863, why the judgment therein should not be opened, and he, plaintiff, let into a defence, which we find to have been sufficient notice to the defendant of plaintiff's objections to his possession, and an intention on his part, to re-assert his claim thereto; and we find, that the part of the permanent improvements, as aforesaid, made by defendant, which was made and done by defendant after he resumed possession, and before plaintiff returned from the army, July 1st 1865, and was in condition to know of defendant's possession and improving, and to object thereto, amounted in value to $4000, and the value of the part of said improvements, so made or done by the defendant, between the time of plaintiff's return from the army, and the 11th of November 1867, when he did object, and give notice of his objection and claim, as aforesaid, was $2700. We find that, whilst defendant was so in possession, as aforesaid (said contract, in writing, between him and the plaintiff, not being recorded), he, the defendant, mortgaged the property in question, in connection with other property of his, to the Dollar Savings Bank, for $3000, with 8 per cent. interest from date, and dated

[Davidson *v.* Barclay.]

August 28th 1865, and recorded same day, which mortgage still remains unsatisfied of record. We find, that of the interest on the purchase-money for the property in dispute, under the contract between the parties, dated March 30th 1861, there was due, and unpaid, at the date of institution of the present suit, the sum of $320.66, and at the present time, inclusive of the last-mentioned sum, there is due and unpaid thereof, the sum of $188.50, in all $509.16. Upon the facts so found, as aforesaid, according as the law may be, we find,

1. If nothing in said facts contained should prevent or bar the plaintiff's recovery unconditionally, then we find for him six cents damages and six cents costs.

2. If the plaintiff is barred and precluded in law from a recovery in this case absolutely, then we find for the defendant.

3. If the plaintiff is entitled to recover, upon paying the defendant for all his permanent improvements, made by him on said property within a reasonable time, then we find for the plaintiff six cents damages and six cents costs, upon payment by him, to the defendant, the value of said improvements, to wit, the sum of $7000, within twelve months from this date, with interest.

4. If the plaintiff ought to recover only upon payment, to the defendant, for the improvements made by him, as aforesaid, between the date or time when he returned from the army, and could have objected, and the time when he did object, and give notice to the defendant, to wit, between July 1st 1865 and November 11th 1867, and should recover without paying more than this part, then we find in favor of the plaintiff six cents damages and six cents costs, upon payment by him, to the defendant, the sum of $2700, for the value of said improvements, within twelve months, and with interest from this date.

5. If the plaintiff should recover, but with the superadded condition of his first paying the interest remaining due and unpaid, under said contract of purchase between him and the defendant, we find the sums due at the commencement of this suit, and at the present time, as aforesaid, the one or the other, as the court may be of opinion, to be added to and included in the condition, and paid by the plaintiff to the defendant, within twelve months from this date, with interest.

The court, June 12th 1869, entered judgment for the plaintiff on the special verdict for six cents damages and six cents costs.

The defendant took a writ of error, and assigned for error, amongst others, the several rulings on the questions of evidence and the entering of judgment generally for the plaintiff on the special verdict.

*Howard & Shaffer* and *B. F. & A. Y. Lucas*, for plaintiff in error.—A vendor who obtains a conditional verdict against his

[Davidson *v.* Barclay.]

vendee becomes absolute owner on the failure of the vendee to comply with the condition: Treaster *v.* Fleisher, 7 W. & S. 137; Seitzinger *v.* Ridgway, 9 Watts 496. Ejectment is properly brought against the party in possession at the issuing of the writ: Act of March 21st 1772, § 8, 1 Sm. Laws 372, Purd. 364, pl. 2.

The plaintiff should have tendered the money due on his articles before bringing suit: Calhoon *v.* Hollenbach, 16 S. & R. 425. The plaintiff seeing improvements, and not objecting, is estopped: McKelvy *v.* Truby, 4 W. & S. 323; Carr *v.* Wallace, 7 Watts 394; Harris *v.* Bell, 10 S. & R. 39.

*R. E. Stewart* and *J. P. Penny,* for defendant in error.— Ejectment to enforce a contract must be brought against the vendee or some one representing his title: Thompson *v.* Adams, 5 P. F. Smith 479. Even in the ordinary ejectment a judgment against tenant would not conclude the landlord's title without notice to him: Chirac *v.* Reinicker, 11 Wheat. 280; Boyer *v.* Smith, 3 Watts 449; Act of 1772, *supra;* Kraumph *v.* Hatz, 2 P. F. Smith 525. A vendee once in possession under articles, and illegally ousted by the vendor, need not prove tender of the purchase-money before bringing suit: D'Arras *v.* Keyser, 2 Casey 249; Harris *v.* Bell, 10 S. & R. 39; Bassler *v.* Niesly, 2 Id. 352. Davidson having obtained possession unfairly was not an improver in ignorance of his rights, and could not require prompt action by Barclay: Eberts *v.* Eberts, 5 P. F. Smith 110. He was not misled by Barclay; this would be essential to an estoppel: Diller *v.* Brubaker, 2 P. F. Smith 498; Commonwealth *v.* Moltz, 10 Barr 531; Crest *v.* Jack, 3 Watts 238.

The opinion of the court was delivered, October 20th 1870, by Agnew, J.—The principal questions in this case arise out of the special verdict, and are upon the effect of the ejectment of 1863, the estoppel alleged, and the equity of Barclay under the contract. If Barclay was a party, in fact or in law, to that ejectment, his failure to pay the purchase-money in the time allowed by the award would conclude him. He was not a party, in fact, for the ejectment was not against himself, but against others not privies to his contract. Was he a party by operation of law? We think not. And first he was not liable to suit, being at the time in military service; and any attempt to deprive him of his exemption by indirection must fail. The Act of 18th April 1861, P. L. 409, enacts that no " civil process shall issue or be enforced against any person mustered into the service of this state, or of the United States, during the term for which he shall be engaged in such service, nor until thirty days after he shall be discharged therefrom. Provided, that the operation of all statutes of limitation shall be suspended upon all claims against such person during

[Davidson *v.* Barclay.]

such term." This law has been held to be constitutional : Breitenbach *v.* Bush, 8 Wright 313; Coxe *v.* Martin, Id. 322. Under this act, had the writ issued against Barclay, the court would have abated it.

Now, on inspection of the præcipe in ejectment, it is evident the writ was intended to operate indirectly upon Barclay's contract, without making him a party. This the court would not permit, because it would be an evasion of the Act of 1861. We are therefore brought to the next point, that, on the facts found in the special verdict, the device thus resorted to did not operate on the contract, for it had no effect on Barclay's possession. The verdict finds the premises to have been in the possession of Barclay, his family being left in the actual occupancy of the whole premises, except a single room in the house, when he went into the military service. If, therefore, the purpose of the plaintiff in that ejectment was to enforce or rescind the contract, he was bound to issue the writ against Barclay, and to serve it on an adult member of his family, as provided by law. Instead of this, he issued his writ against persons neither in privity of estate nor in actual possession of the premises and representing Barclay's title. Mrs. Anderson, one of the defendants, was but an inmate of Barclay's family, a mere lodger, having neither privity of estate nor possession. The utmost which could be made of her relation to him, was, that as an adult member of his family, a writ against him might have been served on her. George Mickey, the other defendant, had no such possession of the premises as would make an ejectment against him alone, an equitable remedy for specific performance. The verdict finds that he occupied but a single room, for which he paid rent; while the possession at large—that which represented the contract to be affected by the ejectment—was actually in Barclay, who was not made a party to the writ. Admitting that Mickey could be joined in the suit with Barclay, or could be returned by the sheriff as in possession of a part, under the Act of 1807, still he did not represent Barclay's possession, nor did he represent the whole premises bound by the contract. It is not the case of an absent vendee leaving a tenant in possession, who would be bound under the Act of 1772, to notify his landlord of the service of the ejectment; but Barclay was himself in the principal possession by his family, and entitled to service on himself.

It may be conceded, for the sake of the argument, that a vendor can enforce his contract, by bringing his ejectment for a single tract, where several distinct tenements constitute the subject of the contract; yet, certainly he cannot enforce specific performance of the entire contract, by an ejectment against an under tenant of a single field of a tract or of a single room in a house. Specific performance of a contract of sale is a proceeding in equity which requires the object of it to be set forth fully, in order to make the decree available. A bill in

[Davidson *v.* Barclay.]

equity would be regarded as imperfect, which set forth a single room in a house as the subject of the contract. No decree could be made for a proper deed, or for the surrender of the possession of the entire subject, on failure to perform under such an imperfect bill. An ejectment as a substitute for a bill, would be in no better condition. The habere facias could issue only for the premises described in the writ. Then supposing the bill to describe the whole premises, but to be brought against a mere tenant of a small and insignificant part, how could a chancellor make a decree against the vendee, not a party to the bill, to operate on his contract for the whole? In neither proceeding, by bill or by ejectment, would equity suffer an unsummoned vendee to be affected by the decree or judgment in a proceeding against one who did not represent fully and truly the entire subject of the contract.

How otherwise could the sheriff give possession of the whole premises? How could he turn out the vendee in actual possession of the premises at large, without notice of the writ, upon a judgment against a tenant of an insignificant part only? More especially, how could this be done when the vendee was omitted purposely from the writ, in order to evade the provision in the act of 18th of April 1861? Barclay, therefore, not being a party to the former ejectment, in fact or in law, he is not concluded by the award in that suit. This frees the case from the rule that one verdict and judgment, in ejectment to compel specific performance of a contract of sale, is conclusive; and the case now stands as the ordinary one of a second ejectment, and the recovery depends on the contract relations of the parties. Barclay can therefore avail himself of all the facts found in the special verdict which show the true state of this contract relation, and the unlawfulness of Davidson's entry, as a means of enforcing the contract. The verdict finds that the interest has been paid by Barclay up to October 1st 1863; the next instalment, therefore, not falling due till April 1st 1864. Davidson had no right to enter as he did in the fall of 1863; nor had he a right then to declare the contract forfeited; the contract being fully performed up to that time. For the same reason he could not declare the principal all due, which, by the terms of the contract, would not fall due until the year 1870, unless Barclay failed to pay the interest for thirty days. And even had the interest been over-due thirty days, it gave Davidson no right to rescind the contract. It gave a right to *payment* of the entire purchase-money, and he might proceed to enforce performance by ejectment or by bill, in which the equities of the parties could be adjudged and controlled by the court. But, as we have seen already, the ejectment of 1863 being inoperative upon the contract, and the interest having been paid up to October 1st 1863, Davidson's entry under the ejectment was without effect, and placed him in no better position than he was before

upon the question of rescission. It clearly gave him no right to withhold the possession from Barclay, who was no party, and who had up to this time fully performed his contract. Nothing short of a conclusive effect given to that ejectment could protect Davidson, and that being out of the way, as we have already shown, he was bound to yield up the premises to Barclay's demand, at least until the latter fell into arrears in payment of the interest. And here, again, Barclay is relieved, for the verdict finds that the possession or rent of the premises after the entry of Davidson was equal to the interest. Davidson, therefore, having entered before any interest was in arrear, and being in the possession of the profits of the property, equal to the interest, could claim no interest without a surrender of the possession. He had tied up his own hands, and could, in equity, claim nothing until he did equity. An additional fact is found by the jury, which strengthens Barclay's position.

In violation of Barclay's rights, Davidson took down Barclay's building, which he had erected, and removed it to another lot, appropriating it to his own use. The sum thus taken out of Barclay's pocket was $500, this being the value of the building, as found by the jury. Another consequence of these facts is, that there being no interest in arrear, and Davidson having no right, under the contract, to declare the purchase-money immediately due, and it being not payable until 1870, Barclay had nothing to tender when he brought his ejectment.

The influence of all these facts is further felt upon the question of estoppel, which is the next point to be considered. Davidson's ejectment of 1863, was brought in violation of Barclay's rights, no interest being due, and Barclay himself being purposely left out of the writ. When Davidson entered into possession, it was in violation of Barclay's contract, there being no default by Barclay. His operations upon the property began, also, in violation of Barclay's rights, by his taking down and removing buildings to the value of $500, which Barclay had erected under his contract. Barclay clearly did nothing to encourage him to do these things. He was absent in the service, and did not return home until July 1865, Davidson, in the meantime, beginning his improvements, and having expended $4000 of their value, before Barclay's return. So far, Davidson was not misled by Barclay, but acted on what he conceived to be the legal effect of the ejectment of 1863, which he was bound to know was issued in violation of his contract and of Barclay's rights. The jury do not find that he was misled by any act of Barclay's, but that he took possession and made the improvements in assertion of his claim of title, and in the belief that Barclay's equitable title was extinguished by the ejectment. In this he was misled by himself, or those under whose advice he acted, and not by Barclay. Nor did Barclay's

[Davidson *v.* Barclay.]

silence mislead. Silence estops only where it is a fraud; but Barclay was absent in the service, and not in a position to speak out.

Then, coming down to the time of Barclay's return, in 1865, it is not found that Barclay knew his rights, and acquiesced in the subsequent expenditure of the $2700 found by the jury as the sum expended by Davidson on the property, between the time of Barclay's return and that of moving to open the award, which the jury find was notice to Davidson of Barclay's unwillingness to acquiesce in that proceeding. As a matter of inference, it is even less likely that Barclay, who was absent, knew of the illegality of the proceeding to dispossess him than Davidson, who was present participating. If Davidson was honestly mistaken in his belief, it cannot be supposed Barclay knew more than he, while his moving to set aside the award is some evidence that he was unwilling to let the proceeding stand when he discovered it to be illegal. In order to make the estoppel operative, the jury should have found that, after Barclay's return, he knew his own rights, and lay by with his knowledge. Nor is it found by the verdict that Davidson's expenditure was induced by Barclay's silence; while, inferentially, the greater probability is, that Davidson was proceeding merely in prosecution of his original design to build, formed and acted upon before Barclay's return, and not from any influence arising from Barclay's conduct after his return. The only conclusion to be drawn from the whole verdict is, that Davidson's expenditures of money owe their origin to his own illegal proceeding, and not to Barclay's encouragement, or his silence. There was no estoppel, therefore.

But, though not affected by an estoppel, another question arises, whether, in equity Barclay should not be subjected to terms before he can recover under the facts found by the jury. The plaintiff, Barclay, comes into court upon an equitable title, and must show his contract. Without it he has no title, for the legal title is in the defendant, Davidson. It is clear, therefore, that if there be an equity under the facts found, Barclay must do equity before he can recover.

How, then, does the case stand upon the special verdict? Barclay being in the military service, and not liable to suit, and Davidson's entry into possession being in violation of his contract, accompanied by the removal and appropriation of Barclay's building to the value of $500, it is evident there would be no equity in allowing Davidson for improvements made in his own wrong, in the absence of Barclay, and while he was incapable of forbidding him. It is not a good argument, in such a case, that the improvments were valuable. Value, alone, is not the criterion of equity. The improvements being made in prosecution of his own illegal act, and against the will of Barclay, to allow him for their value, would be to adopt a principle against public policy, and

13 P. F. Smith—27

[*Davidson v.* Barclay.]

against the just rights of Barclay. The latter might not desire, and certainly did not authorize, such improvements. For aught we can know, they were contrary to his views of the mode of improving the property to suit his circumstances, and his desired enjoyment of it. This would conflict with his dominion over it. The unmolested enjoyment of what we possess, is as much a part of the right of property, as the ownership of the title itself. To allow another to dictate its kind and mode of occupancy, is a direct interference with this right. The kind of improvement necessarily controls the mode of enjoyment.

. But as to the value added to the property after the return of Barclay, there is a difference. Though not estopped from recovery on account of ignorance, and the absence of encouragement, Barclay's remissness in investigating the true foundation of Davidson's possession, and right to expend money upon improvements, is a ground of equity. Delay itself, in the case of a contract which the purchaser must pursue eagerly and promptly, is a reason for controlling the performance of the bargain in equity. When Barclay returned from the service, he found that his family was out of possession, and Davidson was in, and engaged in building. He was notified, by these facts, that a change in his relation, under the contract, had taken place, and it was his duty to inquire and ascertain his rights. It is true, he might have been lulled to sleep by the fact that Davidson had recovered at law, and so far escape absolute estoppel; but still, if he possessed an equity, he was bound to make a particular inquiry into it, or subject himself to the consequences of delay. He was bound to know that delay at least, would affect his contract relation, even if not absolutely postponed. He did nothing, however, for two years. Under these circumstances, equity would require him to make good the expenditures by Davidson, in the meantime, which had enured to the benefit of his property. But this sum being wholly unliquidated until found by a jury, and Davidson relying on his recovery in ejectment, and not on a claim to compensation for the late improvements, it made a tender before suit, unnecessary. Judgment on the special verdict can be rendered so as to compel Barclay to do equity, by paying the sum of $2700, before he can take out execution for the possession.

There is no sufficient merit in the bills of exceptions to justify a reversal of the judgment. The first three may be considered together, as involving but a single question. They amount to this—to show that Barclay left home clandestinely to avoid his creditors, and that his enlistment and whereabouts were unknown to his neighbors. But this was no answer to the plaintiff's case, and was not material. The facts offered did not prevent Davidson from bringing his ejectment properly against Barclay himself, and serving the writ on the family, who were in the actual possession.

[Davidson v. Barclay.]

Admitting Davidson to be ignorant of Barclay's enlistment, if it were his true and bonâ fide intention to enforce performance of the contract, it was his duty to make Barclay a party to the writ, and not to bring it against a mere lodger in the family, and the tenant of a single room. It is the illegality of the proceeding, as an equitable remedy, which prevents it from being conclusive, and not the fraud of Davidson. If Davidson be entirely free from an intention to evade the Act of 1861, it is, then, not the less true, as a matter of fact, that Barclay was actually in the military service, and entitled to the benefit of the act; that he was no party, in fact or in law, to the ejectment, and that his contract was actually performed up to the first day of October 1863, a period after the award itself. The refusal to receive the evidence, therefore, was harmless. So the rejection of the offer to prove that the defendant, in that ejectment, set up Barclay's contract in the trial before the arbitrators, did Davidson no harm, for with the fall of that ejectment, all that was done under it fell. Barclay being no party to it, the acts of strangers to his contract could not affect it.

The admission of Barclay's discharge was also a harmless error. There was no real question depending on the discharge or its date. It was the fact of Barclay's being in the military service, and the time of his return to Pittsburg, and not the fact of discharge from that service, which were material; and these were proved abundantly and incontestably, independently of the paper, which was not made until long after the ejectment had been ended, and Davidson had been in possession a year and eight months. The proof came from several witnesses having actual knowledge, whose testimony was not contradicted, that Barclay enlisted in Battery G, Pennsylvania Artillery; joined it in September 1862; served faithfully and continuously until June 20th 1865, without furlough or desertion, and returned to Pittsburg in July 1865. The ejectment was commenced on the 6th of May 1863, the award made August 4th 1863, the time allowed for payment October 4th 1863, and Davidson entered shortly afterward. It is evident, therefore, that the discharge given in 1865 was merely superfluous, and did no injury. We will not reverse for harmless errors.

For the same reason, the sixth and seventh assignments of error, as to the mortgage given by Davidson to the Dollar Savings Bank, are immaterial. The evidence was simply irrelevant, and unless it tended to mislead the jury, its admission will not be a ground of error. Irrelevant evidence received, is often a ground of error, but it is where its effect may be to prejudice the case in the minds of the jury. But its effect here, if it could have any whatever, would have been favorable to Davidson, for it tended to strengthen his case in the minds of a jury, by showing claims against the property on part of innocent persons relying on Davidson's title,

[Davidson v. Barclay.]

and it tended to strengthen Davidson's position upon the question of estoppel against Barclay for his silence and the equity arising from his unreasonable delay.

Upon the whole case, finding no error in the record, the judgment is affirmed, but with this modification, that the plaintiff do pay to the defendant the sum of $2700, with interest from the day of the verdict, within six months from this date, October 20th 1870, and that the execution be stayed in the meantime.